UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LISA M.,[1]

              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

**DECISION AND ORDER**

1:20-cv-1927 (JJM)

        This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to disability insurance ("DIB") or supplemental security income ("SSI") benefits.  Before the court are the parties' cross-motions for judgment on the pleadings [9, 10].[2]  The parties have consented to my jurisdiction [12].  Having reviewed their submissions [9, 10, 11], the Commissioner's motion is granted and plaintiff's motion is denied.

## BACKGROUND

        The parties' familiarity with the 1,766-page administrative record [7, 8] is presumed.  Further, the parties have comprehensively set forth in their papers the plaintiff's

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only the first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering.  All other page references are to the CM/ECF pagination.

treatment history and the relevant medical evidence. Accordingly, I refer below only to those facts necessary to explain my decision.

Plaintiff filed for benefits in November 2012 and September 2017, alleging a disability beginning on April 11, 2011, due to anxiety, temporomandibular joint ("TMJ") disorder, panic attacks, depression, bulging and herniated discs, shoulder pain, headaches, and dizzy spells. Administrative Record [7] at 25, 174, 178, 19, 9185. This matter was previously remanded from this court in order for the Administrative Law Judge ("ALJ") to consider new medical opinions from plaintiff's treating physician, Daniel Trock, M.D. Id. at 918. The Appeals Council ("AC") also ordered the ALJ to further consider: both treating and nontreating source opinions and to explain the weight given to them; the plaintiff's residual functional capacity ("RFC"), with appropriate explanation and references to the record to support the assessed limitations; and plaintiff's past relevant work. Id. In addition, the ALJ was ordered to obtain supplemental evidence from a vocational expert if necessary. Id

An administrative hearing was held on July 22, 2019 before ALJ William Weir. Id. at 827-862 (transcript of hearing). Plaintiff, who was represented by an attorney, testified. The ALJ also heard testimony from Chukwuemeka Efobi, M.D. concerning plaintiff's mental health conditions and from Darius Ghazi, M.D. concerning plaintiff's physical conditions. Id. at 832-39, 840-45. The ALJ developed an opinion from vocational expert Rachel A. Duchon through the use of interrogatories. Id. at 1213-15. The plaintiff's attorney then cross-examined Ms. Duchon at a hearing held June 15, 2020. Id. at 864-74. On September 15, 2020, ALJ Weir issued a decision finding that plaintiff was not disabled from April 1, 2011 through the date of his decision. Id. at 797-846. In reaching that determination, ALJ Weir found that plaintiff's severe impairments were degenerative joint disease of the knees, obesity, tachycardia, and

anxiety disorder. Id. at 801. The ALJ also considered evidence of carpal tunnel syndrome, lumbago, sciatica, and cervicalgia, but determined these conditions were non-severe. Id. at 801-802.[3] None of plaintiff's impairments met the requirements of, nor was medically equal in severity to, the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 803. With respect to plaintiff's physical conditions, ALJ Weir specifically considered listings 1.02 (major dysfunction of a joint) and 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint). Id. at 805-06.

ALJ Weir found the plaintiff had the RFC to perform sedentary work, as defined in 20 CFR §416.967(a), with the following additional limitations:

> "[C]laimant can sit for 6 hours during a normal 8-hour workday and stand or walk in combination 4 hours during a normal 8-hour workday. The claimant can perform simple, repetitive one- and two-step tasks. The claimant can have occasional social contact, but should not work in a crowded or concentrated setting. The claimant can frequently handle, finger and feel. The claimant should not kneel or squat. The claimant should not work at unprotected heights or around dangerous tools, machines, or chemicals".

Id. at 806. ALJ Weir relied upon the interrogatory responses and testimony from the vocational expert to find that there were a sufficient number of jobs in the national economy that plaintiff could perform. Id. at 814-15.

Plaintiff argues that ALJ Weir's analysis of whether plaintiff met the criteria of Listings 1.02 and 1.03 was "inadequate" because he "failed to provide a substantive explanation and simply recited the factors set forth in the listing and identified them as unmet". Plaintiff's Memorandum of Law [9-1] at 15. Plaintiff argues that "there was evidence in the record indicating that Plaintiff met the listing, including the testimony of Dr. Ghazi, medical expert, as

---

[3]   Plaintiff does not challenge these findings.

well as neurological consultation records evidencing left leg weakness with antalgic gait and correlating MRI showing mass effect on the L3 nerve root traversing L4 nerve root". Id. at 16. Second, plaintiff argues that the ALJ failed to follow the AC's remand instructions when he failed to adequately explain the weight he assigned to certain opinion evidence, failed to apply the factors outlined in social security regulations 20 C.F.R. §§ 404.1527(c) and 416.927(c), and improperly "cherry picked" evidence from the record to support the RFC. Id. at 10-12. Specifically, plaintiff takes issue with the ALJ's analysis of the opinions of Dr. Efobi, physical therapist ("PT") William Lubey, and Dr. Ghazi. Id. at 12-14. Finally, plaintiff argues that ALJ Weir "erred by crediting the opinions of consultative examiners and non-treating providers above the opinions of Plaintiff's treating providers". Id. at 15.

The Commissioner responds that plaintiff failed to sustain her burden of proof to demonstrate that she met the medical requirements of listings 1.02 or 1.03, which both require evidence of an "inability to ambulate effectively". Commissioner's Brief [10-1] at 6-10 *citing* 20 C.F.R. Pt. 404, Subpt P, App.1, Listing 1.00(B)(2)(b)(1) and §§ 1.02(A) and 1.03. The Commissioner argues further that ALJ Weir's treatment of the opinion evidence, and his conclusions concerning plaintiff's RFC, are supported by substantial evidence. Id. at 11-21.

For the reasons stated below, I agree with the Commissioner. Accordingly, I deny the plaintiff's motion and grant the Commissioner's motion.

## ANALYSIS

A.      **Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as

adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process.  *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.      ALJ Weir's Determination that Plaintiff's Impairments Did Not Meet Listing 1.02 or 1.03 Was Supported by Substantial Evidence**

"To satisfy Listing 1.02(A) or 1.03, [plaintiff] must show, among other things, the inability to ambulate effectively".  Acevedo v. Berryhill, 2017 WL 5495984, *5 (W.D.N.Y. 2017).  "Inability to ambulate effectively" is defined by the regulations as "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities".   20 C.F.R. Pt. 404, Subpt P, App.1, Listing 1.00(B)(2)(b)(1).  "*To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school".  Id. at 1.00(B)(2)(b)(2) (emphasis in original).

The regulations also identify examples of ineffective ambulation, including "the inability to walk without the use of a walker, two crutches or two canes", "the inability to walk a block at a reasonable pace on rough or uneven surfaces", "the inability to use standard public transportation", "the inability to carry out routine ambulatory activities, such as shopping and banking" and "the inability to climb a few steps at a reasonable pace with the use of a single hand rail".  Id.

ALJ Weir explicitly considered these Listings and Dr. Ghazi's testimony. With respect to Listing 1.03, Dr. Ghazi testified:

> ME2: Pertaining [to] her left knee, she does meet the 1.03. It was [in] regard to the left knee replacement . . . .
>
> . . .
>
> ALJ: Okay. [The] 1.03, did you find evidence that there wasn't . . . return to effective ambulation within 12 months?
>
> ME2: Yes.
>
> ALJ: And what was the period that effective ambulation was not possible?
>
> ME2: From the time that she was diagnosed as having severe arthritis of the left knee, and I think that goes back to 2013 I believe. And when osteoarthritis reached the point that she had to have a knee replaced, from that time on she met the listing at 1.02 prior to surgery and subsequently after surgery, she meets the listing of 1.03.
>
> . . .
>
> Atty: For listing 1.03, how long did she meet that listing for? Or does she still meet that listing? Like how long has that lasted?
>
> ME2: That is uncertain, I don't know.

Administrative Record [7] at 843-44. Dr. Ghazi did not identify any medical record to support his opinion concerning listings 1.02 and 1.03, nor was he able to state how long plaintiff supposedly met the listings. He did, however, specifically identify the condition to which his opinion was related – "osteoarthritis" and a "knee replace[ment]". Id.

Plaintiff does not identify any medical record related to a 2013 left knee surgery. Evidence in the record shows that plaintiff underwent a prior right knee surgery outside the relevant period. See Id. at 330 ("[p]ast surgical history is remarkable for . . . knee surgery in

1997"), 389 ("[r]ight knee surgery in 1998"), 420 ("bilateral knee pain . . . right knee secondary to a fall down in 1998.  Status post surgery in 1998.").

        Instead, plaintiff argues that a different medical condition provides evidence that she met the Listing:  "neurological consultation records evidencing left leg weakness with antalgic gait and correlating MRI showing mas effect on the L3 nerve root traversing L4 nerve root" along with evidence of "difficulty with squatting, and heel and toe walking due to knee pain" at the consultative examination.  Plaintiff's Memorandum of Law [9-1] at 16, *citing* Administrative Record [7] at 430-31 (report of September 20, 2011 neurological consultation with John G. Fahrbach IV, MD) and 421 (consultative examiner Hongbiao Liu, M.D.'s report). Dr. Fahrbach's report does not demonstrate that plaintiff was unable to effectively ambulate at the time.  It states that plaintiff has "severe intractable pain when standing and walking, and does exhibit weakness of her left leg when walking" Administrative Record [7] at 430.  Upon examination, plaintiff was "able to rise from a seated position with moderate difficulty".  Id. at 431.  Plaintiff was walking that day "with a significantly antalgic gait favoring the left lower extremity" and had "difficulty rising to the examination table as a result of left leg weakness" and could not "step up to a stool with the left leg".  Id.  However, that record does not mention "use of a hand-held assistive device(s)", nor any other factor sufficient to satisfy the Listing's requirement of an "extreme limitation of the ability to walk."  20 C.F.R. Pt. 404, Subpt P, App.1, Listing 1.00(B)(2)(b)(1) and (2).

        Plaintiff also cites Dr. Liu's report as evidence that she had "difficulty with squatting, and heel and toe walking due to knee pain".  Plaintiff's Memorandum of Law [9-1] at 16.  However, as the Commissioner points out, Dr. Liu opined that plaintiff had only a "mild limitation for prolonged walking".  Administrative Record [7] at 423; *see also* Commissioner's

Brief [10-1] at 10.  Despite having difficulty with heel and toe walking, plaintiff had a "normal" gait upon examination and "[u]sed no assistive devices".  Id. at 421.  She needed "no help . . . getting on or off [the] exam table" and was "[a]ble to rise from [a] chair without difficulty".  Id. at 421.  Accordingly, his report is not evidence of an inability to ambulate effectively.  I therefore agree with the Commissioner that plaintiff did not meet her burden to prove she met the elements of Listings 1.02 and 1.03.  See Commissioner's Brief [10-1] at 7, 9.

Finally, I do not agree that the ALJ "failed to provide a substantive explanation" to support his conclusion that plaintiff did not meet the Listings.  See Plaintiff's Memorandum of Law [9-1] at 15.  The ALJ specifically identified medical evidence that plaintiff had "a normal gait, with the exception of a brief period where she had an antalgic gait".  Administrative Record [7] at 805-806, citing to id. at 348 ("[w]alks with normal gait" on 7/25/2011); 373 (same); 380 and 431 (Dr. Fahrbach's September 20, 2011 report recording a "significantly antalgic gait"); 541 and 567 ("steady gait" on October 18, 2013); 646 and 677 ("steady gait" on November 13, 2013); 1447 and 1614 (gait "steady" on February 11-12, 2019).  In addition, ALJ Weir cited Dr. Trock's May 27, 2016 report that plaintiff "[w]alks with a normal gait", and plaintiff's own denial of any gait disturbance to her cardiologists on March 27, 2017 (id. at 1275) and February 11, 2019 (id. at 1368).  Accordingly, ALJ Weir's determination is supported by substantial evidence.

C. **ALJ Weir Adequately Explained the Weight Given to Medical Opinions and Did Not "Cherry Pick" the Medical Evidence**

It is well settled that the RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision", and that an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole".  Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Summary Order).  See also Young v.

Berryhill, 2018 WL 2752443, *2 (W.D.N.Y. 2018) ("[i]t is well settled that an ALJ need not adopt one or more medical opinions verbatim in order to render a sufficiently-supported RFC determination"). "The question is, instead, whether the ALJ's conclusion was 'supported by the record as a whole.'" Nieves v. Commissioner of Social Security, 2019 WL 4565112, *4 (S.D.N.Y. 2019) (*quoting* Tricarico v. Colvin, 681 Fed. Appx. 98, 101 (2d Cir. 2017) (Summary Order)).

A treating physician's opinion is accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record". 20 C.F.R. §§404.1527(c)(2); 416.927(c)(2). If the treating physician's opinion does not meet this standard, the ALJ may discount it, but is "required to explain the weight it gives to the opinions of a treating physician. . . . Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand". Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). *See also* 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). "The ALJ must consider, *inter alia*, the '[l]ength of the treatment relationship and the frequency of examination'; the '[n]ature and extent of the treatment relationship'; the 'relevant evidence . . . particularly medical signs and laboratory findings,' supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (*citing* 20 C.F.R. §404.1527(d), now (c)).

Plaintiff argues that ALJ Weir failed to adequately explain the weight he gave to the opinions of Dr. Efobi, PT Lubey, and Dr. Ghazi, and failed to explain why he did not credit the more favorable portions of their opinions. Plaintiff's Memorandum of Law [9-1] at 12-13. Plaintiff argues generally that "the ALJ erred by crediting the opinions of consultative

examiners and non-treating providers above the opinions of Plaintiff's treating providers who have established relationships with Plaintiff and are well-familiar with her medical history, diagnoses, treatment, and symptom severity". Plaintiff's Memorandum of Law [9-1] at 15. As support, plaintiff cites only "[t]he ALJ's treatment of the medical opinion evidence . . . set forth in detail above". Id. Because plaintiff makes arguments only concerning the opinions of Dr. Efobi, PT Lubey, and Dr. Ghazi, I address ALJ Weir's treatment of each of these opinions in turn.

    a. **Dr. Efobi**

Plaintiff asserts that ALJ Weir "failed to make specific citations to the record to support his treatment of the opinion of Dr. Efobi and meet the requirement that the ALJ explain the bases for his findings with sufficient specificity to permit meaningful review". Id. at 12. She asserts that ALJ Weir's incorporation of his prior analysis of the record evidence was "vague". Id. I do not agree.

Had ALJ Weir simply referenced "the objective medical evidence" in the record, his analysis would be insufficient "to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached". Lopez obo Y.T. v. Commissioner of Social Security, 2020 WL 4504987, *2 (W.D.N.Y. 2020). This is not the case, however. ALJ Weir specifically referenced "the objective medical evidence already discussed in this decision, including the benign mental status clinical findings upon examination as outlined above, and continued mental health counseling and treatment". Administrative Record [7] at 811. Two pages earlier in his Decision, ALJ Weir discussed in detail the records of John Fischer, Psy.D., plaintiff's treating psychologist, and the findings upon examination of consultative psychiatric examiner Susan Santarpia, PhD. See id. at 809. In his analysis of the Paragraph B criteria, ALJ

Weir incorporated multiple citations to Dr. Fischer's treatment notes and Dr. Santarpia's report. Id. at 804-805. Given this extensive analysis, I find that ALJ Weir's reference to the "objective medical evidence already discussed in this decision" is sufficient to "construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached" concerning Dr. Efobi's opinion. Id. at 811; Lopez obo Y.T., 2020 WL 4504987 at *2.

    b. PT Lubey

ALJ Weir accorded "some weight" to PT Lubey's opinion. Id. at 812. Plaintiff argues that ALJ Weir "failed to explain the basis for his findings with sufficient specificity to permit meaningful review" and asserts that "the sole basis for the weight afforded was the 'longitudinal treatment history and . . . personal examinations consistent with correlating clinical findings and functional testing". Plaintiff's Memorandum of Law [9-1] at 13. Plaintiff argues ALJ Weir erred because he "failed to provide any specific citation to the record to facilitate meaningful review". Id.

I do not agree. ALJ Weir identified several reasons for assigning only "some weight" to this opinion, notwithstanding that physical therapists typically have a "longitudinal treatment history" with a claimant and "personally examin[e] and treat[]" their clients. Administrative Record [7] at 812.

ALJ Weir first identified PT Lubey's report in his discussion of plaintiff's severe impairments. Id. at 802. He found plaintiff's carpal tunnel syndrome a non-severe condition, which plaintiff does not challenge. ALJ Weir noted that plaintiff engaged in physical therapy with PT Lubey (id., citing PT Lubey's Physical Therapy Initial Evaluation at 782-83), but noted that plaintiff's EMG study showed her symptoms were related to "muscle spasms rather than lesions localized to carpal or cubital tunnel". Id., citing Excelsior Orthopaedics treatment notes dated April 30, 2014 and July 22, 2015 at 740 and 1236. He noted further that "orthopedic

treatment records show that her carpal tunnel syndrome in her bilateral upper limbs are controlled". Id., *citing* treating Nurse Practitioner Kimberly MacDonald's May 4, 2017 treatment note at 1258 (indicating plaintiff's carpal tunnel syndrome is "controlled").

In his discussion of PT Lubey's report, ALJ Weir correctly identified physical therapists as an "other source", rather than an acceptable medical source, pursuant to 20 C.F.R. §§ 404.1527(d) and 416.927(d). "[A]n ALJ is still required to weigh opinion evidence from a physical therapist, and, in rendering the disability determination, should explain the weight afforded to the opinion and why". Trank v. Saul, 2020 WL 2553278, *3 (W.D.N.Y. 2020). "Factors to be considered in determining how much weight to give to a physical therapist's opinion include the examining and treating relationship, the frequency of treatment, whether the opinion is well explained, and whether the opinion is supported by other evidence in the record". Id. Here, ALJ Weir considered these factors. He explained that PT Lubey's opinion is "vague and not expressed in vocationally relevant terms" and "rendered with the intent to be temporary, during the regular course of recovery, and not an accurate depiction of the claimant's overall abilities to function". Administrative Record [7] at 812-13.

Review of PT Lubey's Physical Therapy Initial Evaluation (id. at 782-83) in conjunction with the ALJ's explanation both here and in his discussion of plaintiff's severe conditions, demonstrates that his reasoning is supported by substantial evidence. The report itself is entitled an "initial" evaluation and contemplates that plaintiff's condition will improve within "4 weeks". Id. at 783. There appear to be no other treatment notes from PT Lubey in the file, nor does plaintiff identify any. The single, initial report focuses on plaintiff's right hand and arm. PT Lubey does not explain the functional impact of his opinion that plaintiff's "physical

functional status primary measure is 44/100" or his comment that plaintiff's impairment is "very severe".

Moreover, other records cited by ALJ Weir elsewhere in his opinion support his finding that PT Lubey's opinion was made "during the regular course of recovery". The July 22, 2015 Excelsior Orthopaedics treatment note (*cited* at 802) records plaintiff's statement that "her symptoms did improve some with therapy last year", notwithstanding some ongoing symptoms. Id. at 1236. Her treating nurse practitioner stated in her May 4, 2017 treatment note (*cited* at 802) that plaintiff's carpal tunnel symptoms were "controlled". Id. at 1258.

Finally, ALJ Weir incorporated into the RFC restrictions related to plaintiff's ability to use her hands on a continuous basis. He found that plaintiff could "frequently", rather than constantly, "handle, finger and feel". I find that ALJ Weir's analysis, read as a whole, satisfies his obligation "to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached" concerning PT Lubey's opinion. Lopez obo Y.T., 2020 WL 4504987 at *2.

### c. Dr. Ghazi

ALJ Weir accorded "partial weight" to Dr. Ghazi's opinion. He found Dr. Ghazi's "opinion regarding the claimant's functional limitations in standing and walking . . . highly persuasive", but disagreed with Dr. Ghazi's testimony that plaintiff met the requirements of the Listings because "the record did not show an inability to ambulate effectively" and "the claimant exhibited a normal gait throughout the relevant period". Administrative Record [7] at 811. ALJ Weir refers back to his analysis concerning whether plaintiff met Listings 1.02 and 1.03. Id.

Plaintiff argues that ALJ Weir's assignment of only "partial" weight to Dr. Ghazi's opinion (*i.e.* finding the functional limitations persuasive, but discounting his opinion concerning the Listings) is improper "cherry picking" from the record. However, as discussed above, ALJ Weir adequately supported his findings concerning the Listings with sufficient explanation and citation of evidence from the record. Accordingly, I find that ALJ Weir's analysis concerning the weight accorded to Dr. Ghazi's opinion is supported by substantial evidence.

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [9] is denied, and the Commissioner's motion for judgment on the pleadings [10] is granted.

**SO ORDERED**.

Dated: March 14, 2023

/s/      Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge